# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

In the Matter of the Search of                   )
*(Briefly describe the property to be searched*   )
*or identify the person by name and address)*     )          Case No.  18-ml-855
Information associated with jhkgjcjh@gmail.com and )
radekbolejko@gmail.com stored at premises  controlled by )
Google LLC                                        )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| See Attached Affidavit in Support of Search Warrant | |

The application is based on these facts:

See Attached Affidavit in Support of Search Warrant

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Todd C. Bina, Supervisory Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____11/30/2018_____

_____
*Judge's signature*

City and state:  Washington, D.C.          G. Michael Harvey, United States Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.    18-ml-855 |
| Information associated with jhkgjcjh@gmail.com and radekbolejko@gmail.com stored at premises controlled by Google LLC | ) ) ) | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Northern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A, hereby incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, hereby incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before    December 14, 2018    *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    G. Michael Harvey, United States Magistrate Judge    .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    11/30/2018    _____
*Judge's signature*

City and state:    Washington, D.C.    G. Michael Harvey, United States Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>    18-ml-855 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____


_____

*Executing officer's signature*


_____

*Printed name and title*

**<u>ATTACHMENT A</u>**
**Property to Be Searched**


This warrant applies to information that is associated with the Google accounts identified

by **jhkgjcjh@gmail.com** and **radekbolejko@gmail.com** and is stored at premises owned,

maintained, controlled, or operated by Google LLC, a company that accepts service of legal

process at 1600 Amphitheatre Parkway in Mountain View, California.

## ATTACHMENT B

**Particular Things to be Seized and Procedures
to Facilitate Execution of the Warrant**

**I.    Information to be disclosed by Google LLC ("PROVIDER") to facilitate
execution of the warrant**

To the extent that the information described in Attachment A is within the possession,

custody, or control of PROVIDER, regardless of whether such information is located within or

outside of the United States, and including any records, files, logs, or other information that have

been deleted but is still available to PROVIDER, or has been preserved pursuant to a request

made under 18 U.S.C. § 2703(f), PROVIDER is required to disclose the following information to

the government, for each account or identifier listed in Attachment A ("the Accounts"):

(a)    All records or other information regarding the identification of the Accounts, to

include full name, physical address, telephone numbers, username and other

identifiers, primary email address, any secondary or alternative email addresses

(including both current and historical accounts), records of session times and

durations, the date on which the Account(s) was created, the length of service, the

IP address used to register the Account, log-in IP addresses associated with

session times and dates, account status, cookies, connected applications and sites,

methods of connecting, log files, and means and source of payment (including any

credit or bank account number);

(b)    All records or other information regarding the devices associated with, or used in

connection with, the Accounts, (including all current and past trusted or

authorized Android devices and computers, and any devices used to access

Google services associated with the Accounts), including serial numbers, Unique

Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique

Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated

Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile

Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"),

Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"),

Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"),

International Mobile Subscriber Identities ("IMSI"), and International Mobile

Station Equipment Identities ("IMEI") or other device identifier, operating system

information, browser information, mobile network information, information

regarding cookies and similar technologies, and any other unique identifiers that

would assist in identifying any such device(s)

(c)    The types of applications and services utilized by the Accounts;

(d)    All files, keys, or other information necessary to decrypt any data produced in an

encrypted form, when available to PROVIDER;

(e)    For the Account **jhkgjcjh@gmail.com** for the time period **from June 11, 2017,**

**to June 28, 2017**, and for the Account **radekbolejko@gmail.com** for the period

from **June 17, 2017, through June 28, 2017**: All location data, whether derived

from Global Positioning System (GPS) data, cell site/cell tower

triangulation/trilateration, precision measurement information such as timing

advance or per call measurement data, Wi-Fi locations, IP addresses, search

history, advertising data, or metadata of images and videos, including all data

associated with the use of Location Services and Location History, and all Google

Maps data (including data concerning route searches, saved, starred, and/or

favorite locations, frequent locations, and other data associated with the use of My Maps and Location Sharing, and the logs and metadata associated with all of the above), and SSIDs and MAC addresses for all WiFi access points that have been detected by or connected to devices associated with the account.  Such data shall include the GPS coordinates and the dates and times of all location recordings; and

(f)      For both Accounts, **for the period from June 26, 2017 to present**: all records concerning the deletion of location data described in paragraph (e) and associated with the Accounts (except for data deleted by PROVIDER in the normal course of business);

The Provider shall deliver the information set forth above via United States mail or courier to:  Supervisory Special Agent Robert C. Basáñez, Federal Bureau of Investigation, J. Edgar Hoover Building, MLAT Unit, Room 7848, 935 Pennsylvania Avenue, NW, Washington D.C. 20535-0001 or email to HQ_ISP_MLAT_Returns@FBI.gov.

**II.      Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of murder in violation of the criminal laws of Germany, specifically, Section 211 of the Criminal Code of Germany, including, for each account or identifier listed in Attachment A ("the Accounts"), information pertaining to the follow matters:

(a)  Information that constitutes evidence of the identification or location of the users of the Accounts;

(b)  Information that constitutes evidence concerning persons who collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation, including their whereabouts;

(c)  Information that constitutes evidence indicating the Account user's state of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation;

(d)  Information that constitutes evidence concerning how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Account user; and

(e)  Information that constitutes evidence concerning the preparation, execution, and any subsequent concealment of the disappearance and murder of the female victim, including any evidence of Marek Glinski's and Radosław Bolejko's physical movements immediately preceding and following the disappearance, any evidence of a physical location at which they may have disposed of the victim's body, car, or personal belongings, and any evidence that Glinski or Bolejko

4

planned to dispose of evidence of their criminal activity in any such physical location.

### III.     Government procedures for warrant execution

The United States government will conduct a search of the information produced by PROVIDER and determine which information is within the scope of the information to be seized specified in Section II.  That information that is within the scope of Section II may be copied and retained by the United States and shared with appropriate foreign authorities.

Law enforcement personnel will then seal any information from PROVIDER that does not fall within the scope of Section II and will not further review the information absent an order of the Court.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH TWO ACCOUNTS STORED AT PREMISES CONTROLLED BY GOOGLE LLC PURSUANT TO 18 U.S.C. 2703 AND 3512** | ML No. 18-855 |

*Reference: DOJ Ref. # CRM-182-65836; Subject Account: jhkgjcjh@gmail.com and radekbolejko@gmail.com*

**AFFIDAVIT IN SUPPORT OF
<u>AN APPLICATION FOR A SEARCH WARRANT</u>**

I, Todd C. Bina, being first duly sworn, hereby depose and state as follows:

**<u>INTRODUCTION AND AGENT BACKGROUND</u>**

1.      I make this affidavit in support of an application for a search warrant for information associated with two accounts—that is, jhkgjcjh@gmail.com and radekbolejko@gmail.com—stored at premises controlled by Google LLC ("PROVIDER"), an electronic communications services provider and/or remote computing services provider, which accepts service of process at 1600 Amphitheatre Parkway, Mountain View, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A), and 3512(a), to require PROVIDER to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.

2.      The information requested in this search warrant is being sought pursuant to a formal request for assistance ("Request") from the Federal Office of Justice in the Federal Republic of Germany ("Germany"), transmitted to Washington, D.C.  Authorities in Germany are prosecuting Marek Glinski ("Glinski") and Radosław Bolejko ("Bolejko") for homicide offenses, which occurred on or after June 24, 2017, in violation of the criminal law of Germany, specifically, Section 211 of the German Criminal Code.  A copy of the applicable law is appended to this application.  This Request is made pursuant to the Treaty Between the United States of America and the Federal Republic of Germany on Mutual Legal Assistance in Criminal Matters, F.R.G.-U.S., Oct. 14, 2003, S. TREATY DOC. NO. 108-27 (2004) (hereinafter, the "Treaty"), as supplemented by the Supplementary Treaty to the Treaty Between the United States of America and the Federal Republic of Germany on Mutual Legal Assistance in Criminal Matters, F.R.G.-U.S., April 18, 2006, S. TREATY DOC. NO. 109-13 (2006) (hereinafter, the "Supplement").  Under the Treaty and Supplement, the United States is obligated to render assistance in response to the request.

3.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been since 2005.  I am currently assigned to the International Operations Division, Mutual Legal Assistance Treaty Unit, in Washington, D.C.  My current duties include responding to requests from foreign governments pursuant to mutual legal assistance treaties, including serving as the affiant on search warrant affidavits, serving search warrants, and reviewing the data received in response thereto for relevance in compliance with the parameters of the search warrants.  During my employment with the FBI, I have conducted investigations related to numerous criminal and counterterrorism investigations.  I have experience in the execution of search warrants and

analysis of collected evidence.  Additionally, I have received training in the operation of computers and the collection and handling of digital evidence

4.     The facts set forth in this affidavit are based upon information conveyed to the United States via a request made pursuant to the Treaty and Supplement by authorities in Germany and upon my training and experience.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant.  It does not set forth all of my knowledge, or the knowledge of others, about this matter.

5.     Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of the criminal laws of Germany have been committed by Glinski and Bolejko.  There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachment B.

## **JURISDICTION**

6.     Pursuant to the applicable treaty, this Court has jurisdiction to issue the proposed Order.  *See* Treaty art. 19(3) (authorizing courts to issue orders necessary to execute the request).  In addition, this Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  *See* 18 U.S.C. § 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court "is acting on a request for foreign assistance pursuant to [18 U.S.C.] section 3512 . . . ."  18 U.S.C. § 2711(3)(A)(iii); *see also* 18 U.S.C. § 3512(a)(2)(B) (court may issue "a warrant or order for contents of stored wire or electronic communications or for records related thereto, as provided under section 2703"), § 3512(c)(3) ("application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia").

3

7.     This application to execute Germany's request has been approved and duly authorized by an appropriate official of the Department of Justice, through the Criminal Division, Office of International Affairs ("OIA").[1]  *See* 18 U.S.C. § 3512(a).  An OIA attorney has authorized the undersigned to file this application.

## **PROBABLE CAUSE**

8.     German authorities are prosecuting Glinski and Bolejko for the murder of fifty-five-year-old Danuta Lysien ("Danuta").  Danuta has been missing since the evening of June 24, 2017, and is presumed dead by German authorities.

9.     Specifically, Danuta was last seen on the evening of June 24, 2017.  Danuta, a Polish national, lived in Oldenburg, Germany.  On the afternoon of June 24, Danuta had been shopping at a local drug store; wrappings from her purchases and a receipt timestamped at 14:39 were later found at her home.  Additionally, a sales clerk from a jewelry store where Danuta was a regular customer stated that she had seen Danuta on June 24 between 15:00 and 16:00.  Another witness stated that she had seen Danuta in the driveway of her home speaking with a middle-aged man at approximately 18:00, but could not provide a more detailed description.  No one has seen or heard from Danuta since.  Authorities have also been unable to locate Danuta's phone, purse, identity cards, and gold jewelry.  Authorities searched Danuta's home, where they found her toiletries, medications, and clothes undisturbed, and generally showing no signs of a planned extended absence.  To the contrary, when authorities first searched Danuta's home, they found the lights on and a plate with a half-eaten meal.

---

[1] The Attorney General, through regulations and Department of Justice directives, has delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters.  *See* 28 C.F.R. §§ 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

4

10.     Between the last sighting of Danuta on June 24, 2017, and the night of June 26/27, Danuta's debit card was used to make four successive cash withdrawals from ATMs located in Germany and Poland.  Specifically, authorities determined that four cash withdrawals, each in the amount of EUR 1,000, were made: the first, on June 24 at 23:15 in Oldenburg, Germany; the second, several hours later on June 25 at 03:07 in Oldenburg; the third, over a day later on June 26 at 22:30 in Sroda, Poland; and finally, a few hours later, the fourth at 00:10 on June 27 in Znin, Poland.  In each instance, ATM cameras established that the individual making the withdrawal was a male dressed in all black with a hood wearing a white surgical mask, spectacles, and a peaked cap under the hood.

11.     Over seven months later, on February 14, 2018, Danuta's car was located in a commuter lot in Bremen, Germany.  The license plates had been removed, as had the back seat of the car and the car battery.  Additionally, the seat covers from the driver and passenger seats had been cut out.  Witnesses told German authorities that the car had been parked in the lot since the summer of 2017.

12.     In March 2018, in response to a mutual legal assistance request, Polish authorities provided German authorities with a video from a courthouse parking lot camera in Znin; the video captured activity at the bank at the time of the last cash withdrawal from Danuta's account on night of June 26/27.  The video shows two males in a dark-colored Ford Focus Turnier.  The driver, disguised in a hip-length black jacket with hood and surgical mask, walked to the bank to make the withdrawal.  The passenger of the car appeared to be a taller male.  The license plate was not visible, and authorities consequently released a news article seeking information about the car on May 17, 2018.

13.     On June 5, 2018, Danuta's neighbor and tenant Michael Gawrys ("Gawrys") informed authorities that Glinski, an acquaintance of Gawrys, drove a car matching the one in the video.  Glinski also admitted to authorities that he had introduced Glinski to Danuta in the spring of 2017.  Having failed to mention Glinski during previous questioning, Gawrys claimed that he had not reported his initial suspicion that Glinski was involved because he was afraid of Glinski.

14.     German authorities were subsequently able to confirm that Glinski had registered a black Ford Focus Turnier in his name on June 14, 2018, after purchasing it on June 12 in Oldenburg.  Through an automated license plate recognition system, Glinski's car was recorded driving in the direction of the German-Polish border on June 26, 2017, at 19:14.  The car was subsequently registered at two toll stations on the route to the locations of the last two cash withdrawals.  In addition to matching the car's make, model, and location to the one used by the individuals making the cash withdrawals from Danuta's account, Glinski's friends and family confirmed that Glinski always wore glasses and the type of peaked cap worn by the individual captured by the ATM cameras.  Based on this information, authorities issued an arrest warrant for Glinski on June 13, 2018.

15.     On June 19, 2018, following his arrest, Glinski was questioned by German authorities.   Glinski initially admitted that he had had an appointment with Danuta on June 24, 2017, to discuss renting an apartment from her.  Glinski also matched the rough description of a middle-aged man that a witness saw speaking with Danuta that evening.  Glinski went on to claim that Danuta had requested that Glinski withdraw the money for her and, after staying overnight at Glinski's home in Schwerte, Germany on June 25, Glinski claimed he had driven Danuta to Poland to make additional cash withdrawals.  Following the last cash withdrawal in

Poland, Glinski claimed that he subsequently drove Danuta to France via the Czech Republic, Switzerland, and Austria in order to "bypass" Germany.  Glinski further claimed that Danuta bought a ticket under a false name from Marseille to either French Polynesia or the Dominican Republic.

16.     All evidence indicates that this story was entirely fabricated.  In addition to the prior search of Danuta's apartment revealing that there had been no planned absence, Glinski could not name a single witness, truck stop, gas station, or any other piece of information that could corroborate any part of his story.  His claim that he and Danuta had stayed at his home in Schwerte on June 25 was demonstrably false, as property records established that he had not received possession of this home until two months later, on August 28, 2018.  Moreover, an analysis of Glinski's phone and cell site data from Polish and German telecommunication providers established that Glinski had been in Poland continuously since crossing the border on June 26, 2017.   These phone records likewise confirmed Glinski had not travelled to any other countries, including the Czech Republic, Switzerland, Austria, or France.  Glinski's mother confirmed that Glinski had stayed at her house in Poland on June 27, 2017, and was not accompanied by Danuta.

17.     Phone records further established that Glinski had been in Oldenburg Germany from June 12 through June 14, when he purchased the Ford Focus Turnier.  Glinski briefly returned to Poland, before driving from Poland to Oldenburg again on June 18, 2017.  Glinski then remained in Germany until he crossed the border back into Poland the night of June 26, shortly before making the last two cash withdrawals in Poland.  German authorities also subsequently identified Glinski's accomplice during the cash withdrawals as Bolejko.  Bolejko and Glinski were at the time both living in Poland, and cell site data established that Bolejko

travelled with Glinski to Germany on June 18.  Those records also placed Bolejko in the car with Glinski following Danuta's disappearance until the night of June 27, when Glinski dropped Bolejko off at his home in Poland.  Several witnesses, including Bolejko's mother and brother, confirmed that they understood Bolejko to be with Glinski in Germany in June 2017.  Following his arrest on June 21, 2018, Bolejko admitted to authorities that he had driven to Poland with Glinski but did not know Danuta.  Bolejko then refused to make any further statements. Statements by Bolejko did not match Glinski's story.

18.     Upon their arrest, German authorities seized Glinski's and Bolejko's respective mobile devices.  Glinski was in possession of an Android-based mobile phone with IMEI 869398026001436.  An analysis of the phone showed that it was associated with the Google account **jhkgjcjh@gmail.com**.  Authorities also seized an Android-based mobile phone with IMEI 863692036088581 from Bolejko.  An analysis of that phone established that it was associated with Google account **radekbolejko@gmail.com**.  Subscriber records provided to German authorities by PROVIDER established that Glinski had enabled, *inter alia*, Google My Maps and Location History for the account **jhkgjcjh@gmail.com**, which he had created on June 3, 2017.  Subscriber records likewise established that Bolejko had enabled, *inter alia*, Google My Maps, Google Maps Engine, and Location History for the account **radekbolejko@gmail.com**, which had been active since November 14, 2005.

19.     Based on the investigation to date, German authorities believe that between June 24 and June 27, 2017, Glinski, in conjunction with Bolejko, killed Danuta and disposed of her body and personal items following, or in the course of, a robbery or theft.  Due to Glinski's and Bolejko's relative unfamiliarity with the Oldenburg area, authorities also believe that Glinski and Bolejko would have needed to search for directions and otherwise utilize map options on their

phones to determine where to conceal Danuta's body, personal items, and car, as well as to determine a plan for where to make the cash withdrawals.

20.     Because Polish and German phone records established that both Glinski's and Bolejko's mobile devices were active throughout their travels between Poland and Germany surrounding the time of Danuta's disappearance, and subscriber data provided by Google likewise confirmed that the mobile devices had Location History and Google My Maps enabled, German authorities now seek location records held by PROVIDER in order to precisely reconstruct Glinski's and Bolejko's movements before, during, and immediately after Danuta's disappearance and locate Danuta's body.

21.     Based on my training, experience, and the facts of this investigation, I believe probable cause exists that the fruits, instrumentalities, and evidence of murder will be found in the accounts **jhkgjcjh@gmail.com** and **radekbolejko@gmail.com**.  Accordingly, I submit that there is probable cause to search the accounts.

## BACKGROUND CONCERNING GOOGLE

22.      PROVIDER is the provider of the internet-based accounts identified by **jhkgjcjh@gmail.com** and **radekbolejko@gmail.com**.

23.     PROVIDER is considered an electronic communications service ("ECS") and a remote computing service ("RCS") provider because it provides its users access to a variety of electronic communications and remote computing services as defined by 18 U.S.C. §§ 2510(15) and 2711(2).  PROVIDER provides a diverse array of Internet-based services designed to facilitate communication, information sharing, and cloud storage for its users.  User-based services range from email (Gmail), to online collaboration platforms (such as Google Docs, Google Sheets, Google Forms, and Google Jamboard), to cloud storage (Google Drive).

PROVIDER requests that when users create a PROVIDER account, they provide basic information, such as name, zip code, and other personal/biographical information. However, PROVIDER does not verify the information provided for its free services.

24. Additionally, PROVIDER provides the Android mobile operating system used on mobile electronic devices, such as smartphones and tablets. Mobile devices running on the Android operating system frequently come with a suite of PROVIDER applications—such as Gmail, Chrome, Google Maps, and Google Play—preinstalled on the device and accessible using a PROVIDER account. When a user purchases and activates a mobile device running the Android operating system, one of the initial prompts during the set up phase is to associate a Gmail account with the device. If the consumer does not have an existing Gmail account, the operating system prompts the user to create a new account. Whether the Gmail account is new or existing, the association of the account with the device allows PROVIDER to collect and store information regarding the use of the device which can be relevant to the criminal investigation.

25. PROVIDER maintains electronic records pertaining to each PROVIDER account. These records include account access information, email transaction information, account application information, and device registration information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

26. PROVIDER stores information about mobile devices associated with the user's PROVIDER account. This includes the make, model, and unique serial numbers of all linked devices. Based on my training and experience, I know this information can help identify previously unknown mobile devices associated with the suspect's account.

27.     Users of PROVIDER'S services may access their accounts on servers maintained or owned by PROVIDER from any computer or mobile device connected to the Internet located anywhere in the world.

28.     PROVIDER collects and retains location data from Android-enabled mobile devices that have opted into the Location Services and Location History services.  The company uses this information for location-based services, such as targeted advertising and Google Maps guidance.  This information derives from a range of sources, including Global Positioning System (GPS) data, cell site/cell tower information, and Wi-Fi access points.  User preferences may impact the extent and detail of the location information collected.  Other information may be collected by PROVIDER that provides inferences about a user's location.  For example, WiFi access points may have descriptive names or be associated with locations in publicly accessible geolocation databases.  IP addresses may also be associated with locations through similar services.  Advertising records may contain specific or inferred location information.  Metadata associated with image and video files stored by PROVIDER on behalf of a user may include information about where the images or videos were taken (EXIF data, for example).  In my training and experience, this data can show the movement of the suspect's mobile device and assist investigators with establishing patterns of movement and identifying residences, work locations, potential drug stash houses, suppliers, customer addresses, and other areas of investigative interest.

29.     When a user links their Android device to their PROVIDER account, they have the option to transfer all the names, addresses, phone numbers, email addresses, notes, and pictures associated with the account to the phone and vice-versa.  When connected to the internet, Google Services will then sync any future changes across devices associated with the

account which have opted in to this service.  This information can assist with identifying previously unknown co-conspirators or witnesses.

30. PROVIDER offers a range of additional services to its users which can be accessed from an Android device via mobile applications or the Google Chrome web browser. These include:

a. **Google Maps**, a geolocation service through which users can find and share turn-by-turn directions between two points, save locations, and search geographic areas, including their current vicinity.  The information stored by Google associated with Google Maps may include all maps for which the user previously searched, records associated with custom maps created by or shared with the user, changes and edits to public places made by the user, starred places, private labels, and saved locations.  PROVIDER retains a record of the use of this service whenever the user is logged into their account and has opted into location services and history settings.  PROVIDER account holders can also create, save, and share personalized maps using **Google My Maps**;

b. **Google Location Services and Location History**, device settings by which users authorize PROVIDER to access and retain a record of their device's approximate location at regular intervals using GPS, WiFi, mobile networks, sensors, and other sources.  This location data is then supplied to any applications (whether PROVIDER-based or otherwise) operating on the devices that have been authorized by the user to access the user's location information; and

      c. **Web & App Activity**, a setting by which users authorize PROVIDER to maintain

        a history of the account's activities, including web-browsing, searches of the

        Android device, location, and recent application usage.

31.    In my training and experience, evidence of who was using the PROVIDER

services associated with an Android mobile device and evidence related to criminal activity of

the kind described above, may be found in the files and records described above.  This evidence

may establish the "who, what, why, when, where, and how" of the criminal conduct under

investigation, thus enabling the United States to establish and prove each element or,

alternatively, to exclude the innocent from further suspicion.

32.    In addition, the user's account activity, logs, stored electronic communications,

and other data retained by PROVIDER can indicate who has used or controlled the account.

This "user attribution" evidence is analogous to the search for "indicia of occupancy" while

executing a search warrant at a residence.  As an example, because every device has unique

hardware and software identifiers, and because every device that connects to the Internet must

use an IP address, IP address and device identifier information can help to identify which

computers or other devices were used to access the account.  Such information also allows

investigators to understand the geographic and chronological context of access, use, and events

relating to the crime under investigation.

33.    Based on my training and experience, Google Maps can contain evidence of the

user's location and identity.  For example, a user will frequently save his home and/or work

locations, and will "star" or favorite common destinations.  A user who plans a robbery may

search for the victim's location via Google Maps and may use Google Maps to get directions

from the user's residence to the victim location, revealing both the user's address and specific

planning steps taken in furtherance of the crime

34.     Account activity may also provide relevant insight into the account owner's state

of mind as it relates to the offenses under investigation.  For example, location history may

indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to

commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to

conceal evidence from law enforcement).

35.     Therefore, PROVIDER's servers are likely to contain stored electronic

communications and information concerning users of Android devices and related PROVIDER

services.  In my training and experience, such information may constitute evidence of the crimes

under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

36.     Based on the forgoing, I request that the Court issue the proposed search warrant.

37.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not

required for the service or execution of this warrant.

38.     Because the warrant will be served on PROVIDER, who will then compile the

requested records and information at a time convenient to it, there exists reasonable cause to

permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

_____

Todd C. Bina
Supervisory Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on November 30, 2018

_____

G. Michael Harvey
UNITED STATES MAGISTRATE JUDGE

## **Relevant Provision of the German Criminal Code**

**Section 211**

(1) Whosoever commits murder under the condition of this provision shall be liable to imprisonment for life.

(2) A murderer under this provision is any person who

> Kills a person for pleasure, for sexual gratification, out of greed or otherwise base motives, by stealth or cruelty or by means that pose a danger to the public or in order to facilitate or cover up another offence.

. . . .